UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LYDELL HILL,

    Plaintiff,

v.                                      CAUSE NO. 3:22-CV-413 DRL-SJF

BROOKS and SAMS,

    Defendants.

## OPINION AND ORDER

Lydell Hill, a prisoner without a lawyer, is proceeding in this case on two Eighth Amendment claims: (1) against Officer Charnette Brooks "in her individual capacity for compensatory and punitive damages for failing to protect him from being stabbed by inmates, on May 30, 2020;" and (2) against Sergeant Andru Sams "in his individual capacity for compensatory and punitive damages for failing to protect him from being stabbed by inmates, on June 5, 2020[.]" ECF 10 at 5. On September 13, 2024, the defendants filed a joint summary judgment motion. ECF 110. With it, the defendants provided Mr. Hill the notice required by N.D. Ind. L.R. 56-1(f). ECF 114. Attached was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a response to the statement of material facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed over five months ago, but

Mr. Hill still hasn't responded. Therefore the court will now rule on the defendants' summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. "[T]o state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)

2

(quotations omitted). In the context of failure to protect cases, the law equates "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

    A. *Officer Brooks.*

Mr. Hill is proceeding against Officer Brooks for failing to protect him from being stabbed by other inmates on May 30, 2020. ECF 10 at 5. Officer Brooks argues summary judgment is warranted in her favor because she had no specific knowledge of an immediate threat to Mr. Hill's health or safety. ECF 111 at 5-6. Specifically, Officer Brooks cites to Mr. Hill's deposition testimony, where he testified that Officer Brooks should have known he faced a threat to his safety because he told her he was disliked by other inmates and was facing "hostility," but conceded he never informed her about any specific threats made against him. ECF 110-1 at 18-19, 100-01. Specifically, Mr. Hill testified at his deposition to the following:

> Q. So going back to Officer Brooks, did you ever speak to her about any potential threats made against you?
> A. No.
> Q. Did you ever talk to Officer Brooks about any specific threats that were made against you?
> A. The fact that people don't like me. That's the situation that's going on. And she tried to pay attention to the hostility going on here. So a correctional officer, their job is to pay attention to anybody that's inside of here, know what's going on, pay attention to hostility, pay attention to what's going on in the dorm. And make sure the people from one side to the other side. So that's the main thing.

                   And anything after that I didn't have nothing to say without me going to detention and having somebody doing something to me.
    Q.    Okay. So Mr. Hill, what I'm hearing from you, you never told her any specific threats, you just told her about people that didn't like you?
    A.    Yeah, people trying to do something to me.
    Q.    Okay.

ECF 110-1 at 100-01. Mr. Hill was then asked if he ever gave Officer Brooks the names of any inmates making threats against him, and he responded: "Yes, yes. I definitely, to my knowledge, I told her that somebody that I was on the other dorm with, which that was somebody else that would talk to other people that would probably do something to me." *Id.* at 101-02.

Here, no reasonable jury could conclude Officer Brooks was deliberately indifferent to a "substantial risk of harm" to Mr. Hill, as there's no evidence Mr. Hill ever informed Officer Brooks he faced a "specific threat to his safety." *Santiago*, 599 F.3d at 756; *Pope*, 86 F.3d at 92. Specifically, Mr. Hill's deposition testimony shows he only told Officer Brooks that (1) he faced general "hostility" from other inmates; and (2) an inmate on "the other dorm" had threatened him and he believed that inmate "probably" would convince inmates in his dorm to attack him. *See id.* This falls short of the standard for Mr. Hill to inform Officer Brooks about a "specific threat to his safety." *See Pope*, 86 F.3d at 92 (inmate must show the defendant knew "about a specific threat to his safety"); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) (holding that "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence"); *Brown*, 398 F.3d at 911 (a "substantial risk" is a risk "so great that they are almost certain to materialize if nothing is done."). Accordingly, because there's no evidence Mr. Hill ever informed Officer

4

Brooks he faced a "specific threat to his safety," summary judgment is warranted in Officer Brooks' favor on this claim. *See Pope*, 86 F.3d at 92.

  B. *Sergeant Sams.*

Mr. Hill is proceeding against Sgt. Sams for failing to protect him from being stabbed by other inmates on June 5, 2020. ECF 10 at 5. Sgt. Sams argues summary judgment is warranted in his favor because there's no evidence he acted with deliberate indifference to Mr. Hill's health or safety. ECF 111 at 9-10.

As discussed, "to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago*, 599 F.3d at 756. Regarding the second prong, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official that acts reasonably to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997).

Sgt. Sams provides video footage of the incident. ECF 115. On June 5, 2020, Sgt. Sams and another correctional officer were present in the dayroom of Mr. Hill's cellblock. Outside of the presence of Sgt. Sams, Mr. Hill stabbed another inmate in the dayroom with a handmade weapon. ECF 115; ECF 110-2. After stabbing the inmate, Mr. Hill ran over to Sgt. Sams and the other correctional officer with the weapon still in his hand. ECF 115. Once Sgt. Sams and the other correctional officer realized what happened, they began to back away from Mr. Hill and raised their OC spray canisters in his direction. *Id.* Mr. Hill continued to hold on to his weapon. *Id.* The correctional officers deployed OC spray against Mr. Hill, but Mr. Hill shielded his face from the OC spray and began moving toward Sgt. Sams. *Id.* Sgt. Sams ran away from Mr. Hill while Mr. Hill ran behind him with his weapon in his hand. *Id.* Sgt. Sams ran through a door leading into the hallway. *Id.* Once Sgt. Sams made it safely into the hallway, a non-party correctional officer attempted to close the door behind Sgt. Sams because he saw Mr. Hill running behind Sgt. Sams with a weapon in his hand. *Id.*; ECF 110-3. Mr. Hill tried to get through the door behind Sgt. Sams, but was blocked from doing so by the non-party correctional officer. *Id.* As Mr. Hill tried to get in through the door, another inmate ran over from the other side of the dayroom and stabbed Mr. Hill from behind. *Id.*

Here, it's undisputed Mr. Hill stabbed another inmate with a weapon, ran up to Sgt. Sams with the weapon still in his hand, continued to hold on to the weapon after Sgt. Sams unholstered and deployed OC spray, began moving toward Sgt. Sams with the weapon in his hand, and ran after Sgt. Sams once Sgt. Sams tried to run from the area. In light of the chaotic and dangerous situation created by Mr. Hill, Sgt. Sams was entitled to

take reasonable measures to remove himself from the situation and ensure his own safety. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent for acting "with a due regard for their safety"); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) ("A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy."). As Mr. Hill caused Sgt. Sams to reasonably fear for his own safety by approaching and chasing him with a weapon, no reasonable jury could conclude Sgt. Sams acted with "a total unconcern" for Mr. Hill's welfare by running away and ensuring his own safety before addressing any threat posed to Mr. Hill. *See id.*; *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot "be permitted to engineer an Eighth Amendment violation"). Summary judgment is thus warranted in favor of Sgt. Sams on this claim.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 110); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Lydell Hill and to close this case.

SO ORDERED.

May 2, 2025                                                 *s/ Damon R. Leichty*
                                                                        Judge, United States District Court